UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------- X
                                  :

CAROLYN LOPEZ; DAMIAN RAMOS
ESPINOSA; and CAROLYN LOPEZ on behalf of   :       15-CV-7292-ARR-SJB
C.L. JR.,
                                  :       <u>NOT FOR ELECTRONIC</u>
                 Plaintiffs,         :       <u>OR PRINT PUBLICATION</u>
                                  :
     -against-                :       <u>OPINION & ORDER</u>
                                  :

CITY OF NEW YORK; WALTER MARIN;      :
VINCENT BARESE; CHRISTOPHER        :
THOMAS; JOHN DOES #0-3,          :
                                  :
             Defendants.      :
                                  :
--------------------------------------------------------------- X
                                  :

SHAMECCA BRYANT; RICARDO LOPEZ; and  :
LILLIAN LOPEZ,              :
                                  :
             Plaintiffs,       :       15-CV-7360-ARR-SJB
                                  :
     -against-                :       <u>NOT FOR ELECTRONIC</u>
                                  :       <u>OR PRINT PUBLICATION</u>
CITY OF NEW YORK; WALTER MARIN;      :
VINCENT BARESE; CHRISTOPHER        :       <u>OPINION & ORDER</u>
THOMAS; JOHN DOES #0-2,          :
                                  :
             Defendants.      :
                                  :
--------------------------------------------------------------- X

ROSS, United States District Judge:

       Defendants in these two consolidated civil rights cases have brought motions for summary

judgment seeking dismissal of both complaints in their entirety. For the reasons discussed below, the

defendants' motion for summary judgment in <u>Lopez</u> is granted. In addition, the defendants' motion

for summary judgment in <u>Bryant</u> is granted.

1

# BACKGROUND

The New York City Police Department performed two searches on an apartment in Brooklyn in late 2014 and early 2015. In the process, they interacted with the six people staying in the apartment at the time, detaining them while they conducted the searches and ultimately arresting some of them. Those six residents then brought the two lawsuits at issue here. Because the cases arise from the same events, I describe the factual background in a single narrative.

## A. Factual Background

The defendants are officers and detectives with the New York City Police Department. At the time of the incidents at issue here, they were assigned to Brooklyn North Narcotics. Defs.' Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ¶¶ 1, 56, Case No. 15-cv-7292, ECF No. 31 ("Lopez 56.1"); Defs.' Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ¶¶ 1, 64, Case No. 15-cv-7360, ECF No. 38 ("Bryant 56.1").[1] On both October 1, 2014, and January 15, 2015, defendants obtained warrants authorizing "no knock" searches of 18 Hunterfly Place, #1B, in Brooklyn. Lopez 56.1 ¶ 3; Bryant 56.1 ¶ 3. Plaintiff Carolyn Lopez was the lease holder of the apartment at the time. Lopez 56.1 ¶ 4; Bryant 56.1 ¶ 4. The warrants permitted defendants to enter her apartment to search for marijuana and for related paraphernalia and U.S. currency. Lopez 56.1 ¶ 5; Bryant 56.1 ¶ 5.

### 1. October 1, 2014 Search

The defendants conducted their first search shortly after 6:00 A.M on October 1, 2014. Lopez 56.1 ¶¶ 1, 3; Bryant 56.1 ¶¶ 1, 3. Carolyn and her boyfriend, Damian Ramos Espinosa, were sleeping in her bedroom. Lopez 56.1 ¶ 10.[2] Two of Carolyn's adult children—Shamecca Bryant and Ricardo Lopez—were each in other bedrooms in the apartment. Bryant 56.1 ¶¶ 25, 27, 32-33. Carolyn's

---

[1] Defendants accept these facts as undisputed only for the purpose of this summary judgment motion. Lopez 56.1 at 1 n.1; Bryant 56.1 at 1 n.1.

[2] I use the first names of the plaintiffs with the last name "Lopez" throughout for clarity.

eleven-year-old grandson, C.L. Jr., was lying on the couch in the living room.  <u>Lopez</u> 56.1 ¶ 19; Decl. of Suzanne E. Aribakan in Supp. of Defs.' Mot. for Summ. J., Case No. 15-cv-7292 ("<u>Lopez</u> Aribakan Decl."), Ex. F ("C.L. Jr. Interview"), ECF No. 32, at 2:17-3:2.  The defendants—along with at least nine other police officers, <u>Bryant</u> 56.1 ¶ 18—used force to enter the apartment without warning. <u>Lopez</u> 56.1 ¶ 6; <u>Bryant</u> 56.1 ¶ 6.  The officers, including defendants Walter Marin and Vincent Barese, had their firearms out when they entered the apartment.  <u>Lopez</u> 56.1 ¶¶ 7-9, 11; <u>Bryant</u> 56.1 ¶ 20.  At least Barese was also carrying a large police shield.  <u>Lopez</u> 56.1 ¶¶ 7-8.

Lillian Lopez, another of Carolyn's children, was in the hallway outside the apartment when the search began.  <u>Bryant</u> 56.1 ¶¶ 8-9; Statement of Contested Material Facts ¶ 3, Case No. 15-cv-7360, ECF No. 41 ("<u>Bryant</u> Objs.").[3]  Officers pushed her to the ground with their shields.  <u>Bryant</u> 56.1 ¶ 9.  According to Lillian, the officers then walked over her while she was on the ground.  <u>Bryant</u> Objs. ¶ 4.  After she had been face down on the ground around seven to eight minutes, Marin handcuffed her to the rail of the hallway staircase.  <u>Bryant</u> 56.1 ¶¶ 11-12, 15-16.  She was handcuffed there for at least forty minutes.  <u>Id.</u> ¶ 47-48.[4]  While she was handcuffed, she asked to see the search warrant, but Marin and Thomas refused.  <u>Id.</u> ¶ 17.  According to Lillian, she was assigned an arrest number based on this encounter, but the arrest was later voided.  Mem. of Law in Opp'n to Defs.' Summ. J. Mot. 2, Case No. 15-cv-7360, ECF No. 43 ("<u>Bryant</u> Pls.' Opp'n"); Decl. of Victor M. Brown in Opp'n of Summ. J. ("Brown Decl."), Ex. 5 ("Freedom of Information Law Responses"). Defendants, however, state that their "records indicate that there was no arrest, voided or otherwise, for Lillian Lopez on October 1, 2014."  <u>Bryant</u> Defs.' Reply 4.

---

[3] Defendants state that the search began at 6:05 AM, and that Lillian went into the hallway and encountered the police as they went in at 6:30 AM.  <u>Bryant</u> 56.1 ¶¶ 3, 8-9.  Lillian says that she was leaving the apartment around 6:05 AM, when the search began.  <u>Bryant</u> Objs. ¶ 3.  The difference, however, is immaterial.

[4] Lillian alleges that she was handcuffed to the stairs for "about three hours."  <u>Bryant</u> Objs. ¶ 4.  That would, however, be inconsistent with her statement to the CCRB investigator that she was un-handcuffed around 7:30 AM.  Decl. of Suzanne E. Aribakan in Supp. of Defs.' Mot. for Summ. J. Pursuant to Fed. R. Civ. P. 56, Case No. 15-cv-7360 ("<u>Bryant</u> Aribakan Decl."), Ex. H ("L. Lopez Interview"), ECF No. 39, at 28:1-2.

As the search began, Carolyn came out of her bedroom and saw a large police shield.  Lopez 56.1 ¶ 13.  Marin used the shield to push her against the bedroom wall, coming into contact with her face in the process.  Id. ¶ 14.  (According to Carolyn, the shield was pushed into her face with force. Statement of Contested Material Facts ¶ 14, Case No. 15-cv-7292, ECF No. 34 ("Lopez Objs."). Carolyn did not at first know what was going on—it was when she asked if she was being robbed and was told to "freeze" that she realized that the people in her apartment were police.  Lopez 56.1 ¶¶ 15-16.  She was then brought into the living room and handcuffed.  Id. ¶¶ 17-18.  Espinosa was handcuffed tightly in the bedroom and then brought into the living room as well.  Id. ¶¶ 24-25.

Bryant woke up to the sounds of the search and walked halfway out of her bedroom.  Bryant 56.1 ¶¶ 27-28.  Barese pointed a gun at her face and another officer used a shield to push her against the wall.  Id. ¶ 28.  According to Bryant, she was struck with the shield or a baton approximately five times on her legs by an unidentified officer.  Bryant Objs. ¶ 9; Bryant Pls.' Opp'n 4.  Either Marin or Barese then handcuffed her tightly enough that it resulted in injuries to her wrists.  Bryant 56.1 ¶¶ 29-30.  Once she was handcuffed, she was brought to the living room.  Id. ¶ 31.

At the same time, at least one of the officers went into Ricardo Lopez's room and dragged him off of the bed and on to the floor.  Id. ¶ 33.  Ricardo was then dragged four to six feet to the hallway, on his stomach, where an object and officers' knees were placed on his back.  Id. ¶ 34.  Several officers had their guns pointed at his head.  Id. ¶ 35.  He was then handcuffed, tight enough to leave "little marks," and brought into the living room.  Id. ¶¶ 36-37.

C.L. Jr. was already in the living room on the couch when the search began.  Lopez 56.1 ¶ 19. Defendants state that they asked him his age and for him to get up from the couch.  Id. ¶ 20.  Plaintiffs dispute this.  Lopez Objs. ¶ 20.  Once in the living room, Carolyn attempted to approach C.L. Jr. and Marin told her not to move.  Lopez 56.1 ¶ 21.  When C.L. Jr. tried to move towards Carolyn, Marin drew his firearm and said, "If you move again, I'll shoot you."  Id. ¶ 22.  Marin then grabbed C.L. Jr.,

rear-handcuffed him, and sat him down in the living room. <u>Id.</u> ¶ 23. The police taunted C.L. Jr. with homophobic slurs. <u>Id.</u> ¶ 34. They also did not allow him to use the bathroom, causing him to urinate on himself. <u>Id.</u> After about thirty minutes, they took his handcuffs off so that he could go to the bathroom and change clothes. <u>Id.</u> ¶¶ 35-36. He was then released to his aunt, Lillian, and went to school. <u>Id.</u> ¶ 38; <u>Bryant</u> 56.1 ¶ 49.

Around the same time, while plaintiffs were handcuffed in the living room, Thomas explained that the police officers were from narcotics and were looking for drugs. <u>Lopez</u> 56.1 ¶ 26. Carolyn asked to see a search warrant and the officers refused. <u>Id.</u> ¶ 27. The officers asked Ricardo whether there was marijuana, other drugs, or guns in the apartment. <u>Bryant</u> 56.1 ¶ 39. They then found over forty ziploc bags of marijuana in Ricardo's room and over sixty in Bryant's room. <u>Id.</u> ¶¶ 42-44.

At some point, Carolyn and Espinosa were permitted to get dressed. <u>Lopez</u> 56.1 ¶ 32. Once dressed, they, along with Bryant and Ricardo, were taken to a police van outside. <u>Id.</u> ¶¶ 39-40; <u>Bryant</u> 56.1 ¶ 52. All four of them were placed in the van, rear-handcuffed, without seatbelts, Carolyn and Espinosa by Marin and Spataro, <u>Lopez</u> 56.1 ¶¶ 39-40, 44, and Bryant and Ricardo by Marin or other officers, <u>Bryant</u> 56.1 ¶ 52. Barese did not take any plaintiffs to the van. <u>Lopez</u> 56.1 ¶ 41; <u>Bryant</u> 56.1 ¶ 53. While waiting in the van, Carolyn asked for her inhaler and—after multiple requests, she says, <u>Lopez</u> Objs. ¶ 42—was permitted to use it. <u>Lopez</u> 56.1 ¶ 42. Her requests to use the bathroom and for her oxygen tank were denied, she alleges. <u>Lopez</u> Objs. ¶ 42.

Thomas directed Officer Jonathan Quinto, who was driving the van, to leave. <u>Lopez</u> 56.1 ¶¶ 46-48. As it accelerated, Carolyn, Espinosa, Ricardo, and Bryant all fell inside the police van. <u>Id.</u> ¶¶ 49-50; <u>Bryant</u> 56.1 ¶¶ 58-60. Bryant was injured, <u>Bryant</u> 56.1 ¶ 59, and Carolyn alleges that she fell on her knees and hit her head on a bench, <u>Lopez</u> Objs. ¶ 49. Quinto drove the van to the 75th precinct. <u>Lopez</u> 56.1 ¶ 51; <u>Bryant</u> 56.1 ¶ 61. Plaintiffs' arrests were processed and they were taken to Central Booking. <u>See</u> <u>Lopez</u> 56.1 ¶ 53; <u>Bryant</u> 56.1 ¶ 61. Carolyn pleaded guilty to disorderly conduct,

while Espinosa and Bryant accepted adjournments in contemplation of dismissal. Lopez 56.1 ¶¶ 54-55; Bryant 56.1 ¶¶ 63.

### 2. January 15, 2015 Search

The defendants conducted their second search shortly after 6:00 AM on January 15, 2015. Lopez 56.1 ¶ 57; Bryant 56.1 ¶ 65. At least Carolyn, Lillian, Ricardo, and Bryant were present. See Lopez 56.1 ¶¶ 59; Bryant 56.1 ¶ 71, 73-74. Once again, Carolyn and Lillian asked to see the search warrant and defendants refused. Lopez 56.1 ¶ 60; Bryant 56.1 ¶ 72. During the search, the police found three ziploc bags of marijuana in Ricardo's bedroom. Bryant 56.1 ¶ 75. Marin and Barese handcuffed Bryant and Lillian, while an unknown officer handcuffed Ricardo. Id. ¶ 73-74. Then, all three were detained in a police van outside while the search was conducted. Id. According to defendants, Lillian and Bryant were not arrested. Id. ¶ 76. According to plaintiffs, they were arrested and were held in custody for five hours. Bryant Objs. ¶ 20. Ricardo was arrested and transported to the precinct. Bryant 56.1 ¶¶ 77-78. He fell on the way but sustained no injuries. Id. ¶ 79. He was taken to Central Booking and held in custody for approximately twenty-four hours, then released. Id. ¶¶ 80-81. The charges against him were dismissed about six months later. Id. ¶ 82.

### B. Procedural Background

Two suits arose out of the incidents described above—one brought by Carolyn Lopez, Damian Ramos Espinosa, and C.L. Jr., and one brought by Shamecca Bryant, Ricardo Lopez, and Lillian Lopez.

Carolyn—on behalf of herself and C.L. Jr.—and Espinosa filed suit on December 22, 2015 against the City of New York, Walter Marin, Vincent Barese, Christopher Thomas, and four John Does. Plaintiffs brought eleven federal claims under 42 U.S.C. § 1983—largely for excessive force and false arrest—and seven state claims—largely for negligent training and supervision on the part of the city. Over the course of the litigation, plaintiffs have dropped some of their claims, leaving only

six federal claims and no state claims.  See Lopez 56.1 ¶ 64; Stipulation & Order of Voluntary Dismissal of Specific Claims Pursuant to Rule 41(a)(1)(A)(ii), Case No. 15-cv-7292, ECF No. 22.  The remaining claims are four claims alleging Fourth Amendment excessive force violations and two claims alleging due process and equal protection violations.  Lopez 56.1 ¶ 65.

Bryant, Lillian, and Ricardo filed a notice of claim with the City of New York on April 15, 2015.  Bryant 56.1 ¶ 83.  They then filed suit on December 28, 2015 against the City of New York, Walter Marin, Vincent Barese, Christopher Thomas, and three John Does.  Id. ¶ 84.  Plaintiffs brought nine federal claims under 42 U.S.C. § 1983 for excessive force and false arrest and five state claims— largely for negligence.  All of these claims remain in the case.  There are three excessive force claims, five false arrest claims, and one due process claim, as well as five state tort claims.

In both cases, defendants produced the records from the Civilian Complaint Review Board (CCRB) in May and June 2017.  Lopez 56.1 ¶¶ 62-63; Bryant 56.1 ¶¶ 85-86.  These records included summaries of interviews with Spataro and Quinto as well as audio files of those interviews.  Lopez 56.1 ¶¶ 62-63; Bryant 56.1 ¶¶ 85-86.  Fact discovery in both cases closed November 15, 2017.  See Minute Entry, Case No. 15-cv-7292, ECF No. 18; Minute Entry, Case No. 15-cv-7360, ECF No. 22. In February 2018, defendants moved for summary judgment in both cases on all of the remaining claims.

## DISCUSSION

For the reasons discussed below, defendants' summary judgment motions in both Lopez and Bryant are granted.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact" and that she "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). A material fact is one that "can affect the outcome under the applicable substantive law."  Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996).  A genuine dispute is one that can "reasonably be resolved

in favor of either party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986). In performing this analysis, I must resolve all ambiguities and draw all inferences in favor of the non-moving party. <u>Gallo v. Prudential Residential Servs.</u>, 22 F.3d 1219, 1223 (2d Cir. 1994). "If, in this generous light, a material issue is found to exist, summary judgment is improper." <u>Nationwide Life Ins. Co v. Bankers Leasing Ass'n</u>, 182 F.3d 157, 160 (2d Cir. 100) (quoting <u>Eastway Constr. Corp. v. City of New York</u>, 762 F.2d 243, 249 (2d Cir. 1985)).

The moving party may show that there is no genuine dispute "by showing that little or no evidence may be found in support of the nonmoving party's case." <u>Gallo</u>, 22 F.3d at 1223-24 (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986)). If the moving party meets this burden, the non-moving party "must come forward with specific facts showing that there is a genuine issue for trial." <u>LaBounty v. Coughlin</u>, 137 F.3d 68, 73 (2d Cir. 1998). The non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts,' and 'may not rely on conclusory allegations or unsubstantiated speculation.'" <u>Brown v. Eli Lilly & Co.</u>, 654 F.3d 347, 358 (2d Cir. 2011) (citations omitted) (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986), and <u>F.D.I.C. v. Great Am. Ins. Co.</u>, 607 F.3d 288, 292 (2d Cir. 2010)). If "no rational finder of fact 'could find in favor of the nonmoving party because the evidence to support its case is so slight,' summary judgment must be granted." <u>Id.</u> (quoting <u>Great Am. Ins. Co.</u>, 607 F.3d at 292).

## I. Defendants' Summary Judgment Motion in <u>Lopez</u> Is Granted.

Defendants' summary judgment motion is granted in its entirety. Based on the undisputed facts, plaintiffs cannot demonstrate liability on Claims 2, 7, 10, and 11. And to the extent that plaintiffs may be able to demonstrate liability on Claims 1 and 5, defendants are entitled to qualified immunity.

### A. Defendants' Motion Is Not Premature.

Plaintiffs suggest that defendants' motion should be denied as premature under Federal Rule of Civil Procedure 56(d). I reject this argument, because plaintiffs have not demonstrated that

additional time for discovery is warranted.

If the party opposing summary judgment "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). The affidavit or declaration "must include the nature of the uncompleted discovery; how the facts sought are reasonably expected to create a genuine issue of material fact; what efforts the affiant has made to obtain those facts; and why the efforts were unsuccessful." Paddington Partners v. Bouchard, 34 F.3d 1132, 1138 (2d Cir. 1994); see also Alphonse Hotel Corp. v. Tran, 828 F.3d 146, 151 (2d Cir. 2016). In addition, "[a] party who both fails to use the time available and takes no steps to seek more time until after a summary judgment motion has been filed need not be allowed more time for discovery absent a strong showing of need." Burlington Coat Factory Warehouse Corp. v. Esprit De Corp., 769 F.2d 919, 928 (2d Cir. 1985).

### 1. Depositions

Plaintiffs' failure to conduct depositions does not render the summary judgment motion premature. Plaintiffs state that defense counsel's unavailability "for a protracted time frame" and the necessity of contesting defendants' proposed motion to dismiss prevented them from taking depositions. Mem. of Law in Opp'n to Defs.' Mot. for Summ. J. 9-10, Case No. 15-cv-7292, ECF No. 37 ("Lopez Pls.' Opp'n"). Plaintiffs need depositions, they argue, because depositions would allow them to attribute names to the John Doe defendants and would provide them information about these defendants' "precise roles" in the incidents, "[t]he true amount of force used, the intent and motivation behind same[,] and the credibility of the Defendants." Id. at 10. All of this information, plaintiffs claim, "can only be obtained through depositions." Id.

Plaintiffs' arguments are inadequate. First, they fail to explain with specificity how depositions will create a genuine issue of material fact on any of their claims. Marin and Barese, as well as non-

party officers Quinto and Spataro, have already given sworn testimony to the CCRB investigators. See Lopez Aribakan Decl., Exs. B (first Marin interview), C (Barese interview), H (Spataro interview), I (Quinto interview), and L (second Marin interview). Plaintiffs provide no reason why the officers' deposition testimony is likely to differ from their CCRB testimony. Nor do plaintiffs go beyond broad generalizations in stating that depositions would provide more information about the events described in the complaint. This, combined with plaintiffs' lack of diligence in conducting depositions, make reopening discovery inappropriate. Plaintiffs' stated excuses—their own need to focus on dismissal proceedings and defense counsel's unavailability—are insufficient. Even assuming those circumstances posed serious barriers, plaintiffs appear to have made practically no effort to take the depositions that they deem so essential. They did not seek the assistance of the magistrate judge or indicate that they needed more time. Instead, they waited until after defendants moved for summary judgment to raise the issue. In light of this delay—for which plaintiffs have provided no satisfactory explanation—I decline to reopen discovery for depositions.

### 2. Other Discovery

Plaintiffs also argue that they were prejudiced by the defendants' failure to provide (1) transcripts of the CCRB interviews, (2) a translation of Espinosa's interview (conducted in Spanish), or (3) the officer photographs supposedly used for witness identifications during the CCRB interviews. Lopez Pls.' Opp'n at 10. None of these provides sufficient cause to defer my decision on defendants' summary judgment motion.

Plaintiffs were not prejudiced by the fact that defendants did not give them transcripts of the CCRB interviews. Plaintiffs received the audio recordings in June 2017, five months before the close of discovery and more than seven months before defendants moved for summary judgment. F.C.R.P. 56(d) Aff. ¶ 10, Case No. 15-cv-7292, ECF No. 35 ("Rule 56(d) Aff."). The interviews were entirely at their disposal at that point. To the extent that plaintiffs considered it essential to have transcripts

of the interviews, they could have made or obtained transcripts themselves. The fact that listening to an audio interview is less convenient than reviewing a transcript is not an adequate justification for failing to review discovery materials in preparation for summary judgment.

Plaintiffs' argument as to the Espinosa interview is similarly unconvincing. Plaintiffs had ample time to obtain a translation of the interview. It strains credulity to say that it was impossible for them to do so between June 2017 and this past winter. Plaintiffs' counsel's own website suggests that they have at least one Spanish speaker in the office.[5] Again, the fact that preparing a translation would be less convenient than receiving one ready-made from defendants is not a satisfactory reason for delaying adjudication of the summary judgment motion.

Finally, the fact that defendants did not produce the photographs that CCRB investigators used for witness identifications does render the summary judgment motion premature. Plaintiffs argue that they need the photographs to dispute defendants' claim that Marin had nothing to do with transporting the plaintiffs in the police van (which is relevant to two of their excessive force claims). Rule 56(d) Aff. ¶ 21. But defendants never received—and therefore never relied on—the photographs themselves. Defs.' Reply Mem. of Law in Further Supp. of Their Mot. for Summ. J. 5, Case No. 15-cv-7292, ECF No. 38 ("Lopez Defs.' Reply"). And these particular photographs are hardly the only potential evidence as to which officers were responsible for plaintiffs' van ride. Especially in light of plaintiffs' lack of effort to obtain the photographs before now and the unlikelihood that the photographs themselves will create a genuine issue of material fact, I conclude that this discovery is not essential to my determination of the summary judgment motion.

## B. Defendants Are Entitled to Summary Judgment on Plaintiffs' Excessive Force Claims (Claims 1, 2, 5, and 7).

I grant defendant's motion for summary judgment on all four excessive force claims. On

---

[5] Plaintiffs' counsel's website states "se habla español" ("Spanish spoken here") twice on the firm's home page. Lipman & Booth, www.lipmanandbooth.com (last accessed May 7, 2018).

Claims 2 and 7, I conclude that Marin did not violate the Fourth Amendment. On Claims 1 and 5, I conclude that Marin may have violated the Fourth Amendment but is entitled to qualified immunity.

To prevail on an excessive force claim brought under the Fourth Amendment, plaintiff must show that the officer's actions were objectively unreasonable. See Graham v. Connor, 490 U.S. 386, 395 (1989). This will depend on "the facts and circumstances of [the] particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. The test is an objective one: An officer's intent or motivation is not relevant to whether his use of force was objectively reasonable. Id. at 397. The same principles apply to the use of force in effectuating a search warrant. An "officer[] executing a search warrant for contraband [has] the authority 'to detain the occupants of the premises while a proper search is conducted.'" Muehler v. Mena, 544 U.S. 93, 98 (2005) (quoting Michigan v. Summers, 452 U.S. 692, 705 (1981)). "Inherent in [this] authorization . . . is the authority to use reasonable force to effectuate the detention." Id. at 98-99.

Plaintiff need not have suffered a serious or lasting injury to prevail, as "[d]efendants are liable as long as the force used exceeded the force needed for the factual circumstances." Graham v. City of New York, 928 F. Supp. 2d 610, 618 (E.D.N.Y. 2013) (collecting cases). Some district courts in this circuit have held that plaintiff's injury must generally rise above a de minimis level before force can qualify as excessive under the Fourth Amendment. E.g., Williams v. City of New York, No. 05-cv-10230, 2007 WL 2214390, at *7, 11 (S.D.N.Y. July 26, 2007). These holdings are based on Second Circuit case law that states that, in the Eighth Amendment prisoner context and the Fourteenth Amendment pretrial detainee context, the amount of force used must be more than de minimis. See United States v. Walsh, 194 F.3d 37, 48 (2d Cir. 1999) (Fourteenth Amendment); Romano v. Howarth,

998 F.2d 101, 105 (2d Cir. 1993) (Eighth Amendment). There is no binding precedent, however, that requires plaintiff to show more-than-de-minimis force or injury to prevail on a Fourth Amendment excessive force claim. Indeed there is no reason to assume that such a requirement applies in the Fourth Amendment context. The Fourth and Eighth Amendment serve different purposes and are implemented through different standards. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force." Hudson v. McMillian, 503 U.S. 1, 9-10 (1992). "[A]ll excessive force claims in the prison context are qualified," Walsh, 194 F.3d at 48—in other words, judged in light of the specific nature of the Eighth Amendment. Fourth Amendment claims are not similarly qualified. I therefore decline to extend the requirement of more-than-de-minimis force or injury to this context.

Defendants are not liable for civil damages if they have qualified immunity. An officer is entitled to qualified immunity unless he has "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent." Id. (citation omitted). For the sake of efficiency and constitutional avoidance, I may dismiss a claim on qualified immunity grounds without first determining whether the officer acted unconstitutionally when the law is not clearly established. Pearson, 555 U.S. at 241-42.

### 1. Pushing Carolyn Against the Wall (Claim 1)

Plaintiffs' first claim is that Marin used excessive force on Carolyn when he pushed her against the wall and restrained her on October 1. Compl. & Jury Demand ¶¶ 14-16, Case No. 15-cv-7292,

ECF No. 1 ("Lopez Compl."). I grant defendants' motion as to this claim.

Based on the undisputed facts, I conclude that it is not clearly established whether this conduct violates the Fourth Amendment. Given the circumstances, a reasonable officer may have believed that his use of force was lawful. Marin was, of course, on notice as to the general principle that he could not use an objectively unreasonable amount of force. But using a police shield to restrain an individual against a wall before handcuffing her is not clearly unreasonable. Although it is at least possible that a reasonable jury might find the force used here excessive, I cannot conclude that the unlawfulness—if any—of the conduct would have been apparent to a reasonable officer on the scene. I therefore grant defendants' summary judgment motion as to this claim on the grounds that Marin has qualified immunity. There is one unpublished Second Circuit case that affirmed a denial of qualified immunity on the basis that "[n]o reasonable officer would believe that 'twisting [plaintiff's] arm behind his back and pushing or shoving him into the brick wall outside the school' was a lawful use of force in this circumstance." Weather v. City of Mount Vernon, 474 Fed. App'x 821, 824 (2d Cir. 2012). This is not, however, sufficient to clearly establish the law in this field, and I can find no other authority to suggest that the law is clear enough to put defendant on notice that his conduct was unlawful.

### 2. Causing Carolyn to Fall in the Van (Claim 2)

Plaintiffs' second claim is that Marin and Doe #3 used excessive force on Carolyn when they caused her to fall off the seat of the police van by failing to secure her with a seatbelt and then abruptly accelerating the vehicle. Lopez Compl. ¶¶ 17-19. I grant defendants' motion as to this claim.

For purposes of this motion, defendants concede that Marin placed Carolyn in the van without putting a seatbelt on her. Lopez 56.1 ¶ 40. Some time later, Quinto drove the van away, causing Carolyn to fall from her seat. Id. ¶¶ 47-49. Plaintiffs do not dispute that Quinto drove the van, except to state that because they have not conducted depositions or seen the photos used for identifications

during the CCRB interviews, they have no way of confirming that this is true.  <u>Lopez</u> Objs. ¶¶ 47-49.

Plaintiffs' claim fails as to defendant Marin because placing Carolyn in the van without a seatbelt did not violate her constitutional rights.  At most, Marin was negligent towards the risk that Carolyn might fall when the van eventually moved.  But there is no right under § 1983 "to be free from a government employee's negligence, even if it causes injury."  <u>Carrasquillo v. City of New York</u>, 324 F. Supp. 2d 428, 436 (S.D.N.Y. 2004).  Marin was not required to place a seatbelt on Carolyn while she waited in the stationary vehicle.  Even if he then directed the driver of the van to drive away—which the parties agree he did not, <u>Lopez</u> 56.1 ¶ 48; <u>Lopez</u> Objs. ¶ 48)—it is not at all clearly established that he was under any obligation to secure Carolyn with a seatbelt.  <u>See</u> <u>Jabbar v. Fischer</u>, 683 F.3d 54, 58 (2d Cir. 2012) (holding that failing to provide seatbelts in prison transport vans does not violate the Eighth or Fourteenth Amendments); <u>Carrasquillo</u>, 324 F. Supp. 2d at 437 (same).

Further, plaintiffs' claim must fail as to Doe #3—the driver of the vehicle—because they have failed to make the driver, Quinto, a party to the suit in time.  "Section 1983 actions filed in New York are . . . subject to a three-year statute of limitations." <u>Hogan v. Fischer</u>, 738 F.3d 509, 517 (2d Cir. 2013).  The statute of limitations therefore expired on October 1, 2017.  Once the limitations period has ended, plaintiffs may only substitute in a named defendant for a John Doe defendant if the amendment relates back to the original complaint within the meaning of Federal Rule of Civil Procedure 15(c).  <u>Aslanidis v. U.S. Lines, Inc.</u>, 7 F.3d 1067, 1075 (2d Cir. 1993).  To satisfy that rule, plaintiffs have three potential paths.  Because plaintiffs here cannot satisfy any of these paths, their claim against Doe #3 must be dismissed.

***Rule 15(c)(1)(C).*** Under Rule 15(c)(1)(C), plaintiffs may add a new defendant only if the new defendant "should have known that, but for a mistake of identity, the original action would have been brought against it."[6]  The failure to identify a John Doe defendant before the limitations period has

---

[6] The other requirements of Rule 15(c)(1)(C) are not relevant here, as plaintiffs fail to satisfy this one.

run does not constitute a "mistake of identity." Hogan, 738 F.3d at 517-18. Therefore amendments to substitute individuals in place of John Doe defendants do not relate back to the original complaint and are not permitted under Rule 15(c)(1)(C). Id. at 518.

**N.Y. C.P.L.R. § 203.** Rule 15(c)(1)(A) allows relation back to the extent it is allowed by New York law. And New York law allows relation back when either N.Y. C.P.L.R. sections 203 or 1024 are satisfied. Section 203 closely tracks Rule 15(c)(1)(C). Vasconcellos v. City of New York, No. 12 Civ. 8445, 2014 WL 4961441, at *8 (S.D.N.Y. Oct. 2, 2014). Plaintiffs may only add a new defendant under section 203 if "the new party knew or should have known that, but for an *excusable mistake* by plaintiff as to the identity of the proper parties, the action would have been brought against him as well." Id. (quoting Malament v. Vasap Const. Corp., 728 N.Y.S.2d 381, 381 (N.Y. App. Div. 2001)). As plaintiffs cannot meet the requirements of Rule 15(c)(1)(C), they also cannot satisfy section 203.

**N.Y. C.P.L.R. § 1024.** Section 1024 permits relation back only if plaintiffs have "exercise[d] due diligence, prior to the running of the statute of limitations, to identify the defendant by name." Hogan, 738 F.3d at 519 (quoting Bumpus v. New York City Transit Auth., 883 N.Y.S.2d 99, 104 (N.Y. App. Div. 2009)). To meet this requirement, plaintiffs must have "made timely efforts to identify the correct party before the statute of limitations expired." Strada v. City of New York, No. 11-cv-5735, 2014 WL 3490306, at *5 (E.D.N.Y. July 11, 2014) (quoting Justin v. Orshan, 788 N.Y.S.2d 407, 408 (N.Y. App. Div. 2005)). Here, however, plaintiffs did not exercise due diligence in discovering Doe #3's true identity. Plaintiffs received the CCRB audio recordings in June 2017, four months before the end of the limitations period. Those recordings included an interview with non-party officer Jonathan Quinto, in which he stated that he drove the van to the precinct. Lopez Aribakan Decl., Ex. I at 17:23-25. Plaintiffs may not "rely on [section] 1024 to toll the statute of limitations" if they "learn[] the true identit[y] of the John Doe defendant[] *prior* to the expiration of the statute of limitations. Section 1024 provides no recourse in such an instance." Strada, 2014 WL 3490306, at *6.

Even had Quinto properly been made a party to the suit, plaintiffs' claim against him for driving the van and causing Carolyn to fall would still fail. As with Marin, Quinto's conduct was, at most, negligent and therefore insufficient to support a claim under § 1983. See Carrasquillo, 324 F. Supp. 2d at 436.

### 3. Threatening, Handcuffing, and Harassing C.L. Jr. (Claim 5)

Plaintiffs' fifth claim is that Marin used excessive force on C.L. Jr. by grabbing him, threatening to shoot him, handcuffing him, and causing him to urinate on himself. Lopez Compl. ¶¶ 26-28. I grant defendants' motion as to this claim, because I conclude that Marin is entitled to qualified immunity. While the defendant's conduct is shocking, case law does not clearly establish that it violates the Fourth Amendment. Because a reasonable officer in Marin's position would not have known his conduct violated the Fourth Amendment (if, in fact, it did violate the Fourth Amendment), Marin cannot be held liable.

According to the undisputed facts, Marin (1) pointed his gun at C.L. Jr. (according to plaintiffs) and told him, "If you move again, I'll shoot you," (2) handcuffed him for thirty minutes, (3) called him homophobic slurs, and (4) prevented him from using the bathroom, which resulted in him urinating on himself. It is not clearly established that these circumstances—even combined—rise to the level of a constitutional violation. There is no Second Circuit case law on point. And the relevant district cases suggest that the conduct here may not be unlawful. See Pina v. City of Hartford, No. 07-cv-657, 2009 WL 1231986, at *7-8 (D. Conn. Apr. 29, 2009) (holding that it was not unreasonable for the officers to threaten shoot plaintiffs, point a gun at a sleeping child's face, and scream profanities); Anderson v. United States, 107 F. Supp. 2d 191, 199 (E.D.N.Y. 2000) (holding that drawing a weapon on a child while executing an arrest warrant on a potentially armed and dangerous individual was reasonable); see also Pascual v. Fernandez, No. 11-cv-7075, 2013 WL 474292, at *4 (S.D.N.Y. Jan. 29, 2013) (stating that "[t]he temporary deprivation of the right to use the toilet, in the

absence of serious physical harm or risk of contamination, does not rise to the level of an objective constitutional violation." (quoting Mateo v. Alexander, No. 10-cv-8427, 2012 WL 864805, at *5 (S.D.N.Y. Mar. 14, 2012)). But see Kerman v. City of New York, 261 F.3d 229, 233, 239-40 (2d Cir. 2001) (acknowledging the possibility that saying, "Listen you fucking nut-job, just hold still or I'll blow your brains out," along with other facts, "might well be objectively unreasonable"); Green v. City of Mount Vernon, 96 F. Supp. 3d 263, 296 (S.D.N.Y. 2015) ("[I]t is possible that verbal threats, combined with the brandishing of the weapon, could be unreasonable and therefore constitute excessive force.").

### 4. Handcuffing Espinosa and Causing Him to Fall in the Van (Claim 7)

Plaintiffs' seventh claim is that Marin, Doe #0, and Doe #3 used excessive force on Espinosa when they handcuffed him tightly enough to cause injury and when they caused him to fall off the seat of the police van by failing to secure him and then abruptly accelerating. Lopez Compl. ¶¶ 32-34. I grant defendants' motion as to this claim.

Espinosa's claim relating to the van ride fails for the same reason Carolyn's does. See Section I.B.2. And Espinosa's claim relating to the handcuffs fails because plaintiffs have not alleged that he asked the officers to loosen the handcuffs. District courts in this circuit agree that "[i]n evaluating the reasonableness of handcuffing," courts should consider (1) whether "the handcuffs were unreasonably tight," (2) whether "the defendants ignored the [plaintiff's] pleas that the handcuffs were too tight," and (3) "the degree of injury to the wrists." Lynch ex rel. Lynch v. City of Mount Vernon, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008) (second alteration in original) (quoting Esmont v. City of New York, 371 F. Supp. 2d 202, 215 (E.D.N.Y. 2005)). Plaintiffs have not alleged that Espinosa complained that the handcuffs were too tight, or that defendants ignored any such pleas. Thus, based on the undisputed facts before me, I cannot conclude that defendants violated the Fourth Amendment's prohibition on excessive force by tightly handcuffing Espinosa. See Esmont, 371 F. Supp. 2d at 215 (noting that the court could not find "any cases permitting a plaintiff to establish an

excessive force claim based on tight handcuffing in the absence of a request to loosen them").

### C. Defendants Are Entitled to Summary Judgment on Plaintiffs' Claim Relating to Their Refusal to Show Carolyn the Search Warrant (Claim 10).

Defendants are entitled to summary judgment on Carolyn's claim that defendants violated her Fifth and Fourteenth Amendment due process rights when they refused to show her a copy of the search warrant during both the October and January searches. Lopez Compl. ¶¶ 41-43.

Plaintiffs state that the refusal to show the warrant violated Carolyn's due process "right[] to be treated reasonably" (presumably under the principles of substantive due process), not her right to be free from unreasonable searches and seizures under the Fourth Amendment. Letter from C. Booth (Nov. 26, 2017), Case No. 15-cv-7292, ECF No. 24. But when "a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing' such a claim." Albright v. Oliver, 510 U.S. 266, 273 (1994) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)). Here, the Fourth Amendment provides the specific source of protection against unreasonableness in the context of a search. Plaintiffs' allegations as to the refusal to show the warrant cannot therefore survive as a due process claim.

Nor can they survive as a Fourth Amendment claim. The Supreme Court has so far declined to resolve "[w]hether it would be unreasonable to refuse a request to furnish the warrant at the outset of the search when . . . an occupant of the premises is present and poses no threat to the officers' safe and effective performance of their mission." Groh v. Ramirez, 540 U.S. 551, 562 n.5 (2004). The Second Circuit has not yet issued a binding opinion on this issue, but has stated that "an officer is not required to have a search warrant in hand when conducting a search." United States v. Armstrong, 406 Fed. App'x 500, 501 (2d Cir. 2010). It would follow, therefore, that an officer is not required to provide a copy of the warrant upon request during an ongoing search. Assuming, arguendo, that refusing to show Carolyn the warrant did violate her Fourth Amendment rights, the claim still fails;

defendants are entitled to qualified immunity in light of the fact that the law is not clearly established.

**D.  Defendants Are Entitled to Summary Judgment on Plaintiffs' Claim That They Were Retaliated Against for Carolyn's Earlier Lawsuit (Claim 11).**

Defendants are entitled to summary judgment on plaintiffs' claim that defendants violated their Fifth and Fourteenth Amendment due process and equal protection rights by allegedly targeting and harassing plaintiffs in retaliation for Carolyn's decision to bring a different federal lawsuit against the police over the death of her son. <u>Lopez</u> Compl. ¶¶ 44-46.[7]

First, plaintiffs cannot make out an equal protection claim because they have not alleged that they were treated differently from any similarly situated parties. To allege an equal protection claim, plaintiffs must show the existence of sufficiently similarly situated individuals of a different group who were not subject to the alleged treatment. <u>Joglo Realties, Inc. v. Seggos</u>, 229 F. Supp. 3d 146, 152–53 (E.D.N.Y. 2017). At the very least, plaintiffs must allege the existence of comparators who are similarly situated "in all material respects." <u>Id.</u> at 153. But plaintiffs have not pointed to the existence of any comparators. Their equal protection claim must therefore be dismissed.

Nor can plaintiffs make out a due process claim. As discussed above, when there is a specific source of constitutional protection, a general due process claim will not lie. <u>Albright</u>, 510 U.S. at 273. Here, plaintiffs' claim of retaliation arises under the First Amendment. "[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances." <u>Bill Johnson's Restaurants, Inc. v. N.L.R.B.</u>, 461 U.S. 731, 741 (1983). Retaliating against an individual for bringing a lawsuit infringes on this right. <u>See</u> <u>Marczeski v. Brown</u>, No. 3:02-cv-894, 2002 WL 31682175, at *5 (D. Conn. Nov. 21, 2002); <u>see also</u> <u>Adler v. Pataki</u>, 185 F.3d 35, 45 (2d Cir. 1999).

---

[7] The complaint suggests that this claim was brought on behalf of all three plaintiffs. <u>Lopez</u> Compl. ¶ 45. It is not clear that Espinosa or C.L. Jr. can bring such a claim, as they were not plaintiffs in the earlier lawsuit. <u>See</u> <u>Lopez v. City of New York</u>, Case No. 05-cv-3624. Even assuming they can, their claims would still fail for the reasons discussed in this subsection.

Even under the First Amendment, however, plaintiffs' claim must be dismissed. In this circuit, the existence of probable cause bars a claim of retaliatory arrest. Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001); Mozzochi v. Borden, 959 F.2d 1174, 1179-80 (2d Cir. 1992). Similarly, the existence of a valid search warrant bars a claim of retaliatory search. Smolicz v. Borough/Town of Naugatuck, 281 Fed. App'x 32, 34 (2d Cir. 2008). Plaintiffs do not argue that the arrests lacked probable cause, or that the search warrants were invalid. Their claim would therefore fail even under a First Amendment theory.

## II. Defendants' Summary Judgment Motion in Bryant Is Granted.

Defendants' summary judgment motion is granted.

### A. Defendants' Motion Is Not Premature.

For the same reasons discussed in relation to the Lopez plaintiffs' analogous motion, see Section I.A—and for the additional reason that the Bryant plaintiffs have not submitted the affidavit or declaration required by Rule 56—I reject plaintiffs' contention that defendants' summary judgment motion is premature. Plaintiffs argue that defendants' summary judgment motion is premature under Rule 56 because "no depositions or interrogatory responses of any of the Defendant Police Officers or Plaintiffs Lopez and Bryant have occurred in the instant matter." Bryant Pls.' Opp'n 2. Plaintiffs do not, however, provide an affidavit or declaration with any specific reasons as to why additional time for discovery is warranted. The lack of such an affidavit alone is "sufficient grounds to reject a claim that the opportunity for discovery was inadequate." Paddington Partners, 34 F.3d at 1137.

### B. Defendants Are Entitled to Summary Judgment on Plaintiffs' False Arrest Claims (Claims 1, 3-4, 6, 8).

For the reasons discussed below, I grant defendants' summary judgment motion as to plaintiffs' five false arrest claims.

A false arrest claim can be defeated in two ways that are relevant here.

First, there can be no false arrest claim when the officer had probable cause to arrest the individual. Jaegly v. Couch, 439 F.3d 149, 151-52 (2d Cir. 2006). Probable cause exists when the officer has, at the time of the arrest, "knowledge or reasonably trustworthy information of facts and circumstances . . . sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Jaegly, 439 F.3d at 152 (quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)). "Even if probable cause to arrest is ultimately found not to have existed, an arresting officer will still be entitled to qualified immunity . . . if he can establish that there was 'arguable probable cause.'" Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004). Arguable probable cause exists when "either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Id. (quoting Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991)).

Second, there can be no false arrest claim when there has been no arrest. "[J]ust as not every encounter between a citizen and the police is a seizure . . . , not every seizure is an arrest." Posr v. Doherty, 944 F.2d 91, 97-98 (2d Cir. 1991) (citation omitted). "Whether a seizure is an arrest or merely an investigatory detention[] depends on the reasonableness of the level of intrusion under the totality of the circumstances." Id. at 98. A valid search warrant "implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted," Summers, 452 U.S. at 705, and "to use reasonable force to effectuate the detention," Muehler, 544 U.S. at 98-99. This authority is categorical: when a valid search warrant exists, the police may use reasonable force to detain occupants of that address for the entire duration of the search. Id. at 98. Depending on the circumstances, reasonable force may include handcuffing. Id. at 99. Detaining an apartment's occupants during the execution of a search warrant is justified because it "prevent[s] flight in the event

that incriminating evidence is found," "minimiz[es] the risk of harm to the officers," and "facilitat[es] 'the orderly completion of the search.'" Id. at 98 (quoting Summers, 452 U.S. at 702–03).

### 1. Lillian Lopez (Claims 1 and 3)

Plaintiffs' first and third federal claims are that Lillian Lopez was falsely arrested in both October 2014 and January 2015.

I grant defendants' summary judgment motion as to Claim 1 because I determine that Lillian was not arrested in October 2014. Plaintiffs argue that Lillian's detention rose to the level of an arrest because she was outside the apartment when she was detained and because she was assigned an arrest number. But Lillian was an occupant of the apartment—the fact that she was already in the hallway when the search began does not render her detention unconstitutional. See Summers, 452 U.S. at 702 n.16 ("We do not view the fact that respondent was leaving his house when the officers arrived to be of constitutional significance. The seizure of respondent on the sidewalk outside was no more intrusive than the detention of those residents of the house whom the police found inside."). Moreover, although there is a dispute of fact over whether Lillian was assigned an arrest number, I find this dispute to be immaterial. Even assuming such a number was generated, that does not necessarily mean that she was under arrest for purposes of her Fourth Amendment claim. To the extent that the existence of an arrest number is relevant to determining whether an arrest has occurred, Summers and Muehler suggest that it would not be dispositive. Rather, the issue is whether the officers were detaining the occupants of the apartment during a valid search. If so, a formalistic distinction—like whether an arrest number was generated in a computer system—should not determine the lawfulness of a detention.

I grant defendants' motion as to Claim 3 because plaintiffs do not oppose defendants' summary judgment motion as to the January 2015 arrest. A "federal court[] may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing

summary judgment fails to address the argument in any way." <u>Maher v. Alliance Mortg. Banking Corp.</u>, 650 F. Supp. 2d 249, 267-68 (E.D.N.Y. 2009) (collecting cases). The closest plaintiffs come to opposing defendants' summary judgment motion on this claim is their statement that "Lillian Lopez contends that there is a genuine, material issue of fact in dispute regarding whether she was detained or arrested during the execution of the search warrant on January 15, 2015." <u>Bryant</u> Pls.' Opp'n at 10. But they do not elaborate on what those issues might be, nor do they argue that if there was an actual arrest that day, the officers lacked probable cause to make it. I therefore conclude that defendants are entitled to summary judgment on this claim.

### 2. Shamecca Bryant (Claims 4 and 6)

Plaintiffs' fourth and sixth federal claims are that Shamecca Bryant was falsely arrested in both October 2014 and January 2015. I grant defendants' motion as to Claims 4 and 6 because plaintiffs do not oppose defendants' summary judgment motion as to either of Bryant's arrests. <u>See</u> <u>Maher</u>, 650 F. Supp. 2d at 267.

### 3. Ricardo Lopez (Claim 8)

Plaintiffs' eighth federal claim is that Ricardo Lopez was falsely arrested in October 2014. I grant defendants' motion as to Claim 8 because plaintiffs do not oppose defendants' summary judgment motion as to Ricardo's arrest. <u>See</u> <u>Maher</u>, 650 F. Supp. 2d at 267.

### C. Defendants Are Entitled to Summary Judgment on Plaintiffs' Excessive Force Claims (Claims 2, 5, 7).

I grant defendant's motion for summary judgment on all three excessive force claims.

### 1. Pushing Lillian to the Ground and Stepping on Her (Claim 2)

Plaintiffs' second claim is that Doe #0 used excessive force on Lillian Lopez when he stepped on her back and knees after pushing her to the ground as he entered the apartment at the beginning of the October 2014 search. <u>Bryant</u> Compl. ¶¶ 17-19. For the same reasons discussed above in Section I.B.2, plaintiffs' claim against this John Doe defendant must be dismissed. The statute of

limitations has expired on this claim. And because plaintiffs cannot satisfy the relation-back requirements of either Rule 15(c)(1)(A) or 15(c)(1)(C), they cannot amend their complaint to name a new defendant on this claim.

### 2. Handcuffing Bryant, Causing Her to Fall in the Van, and Potentially Striking Her with a Baton or Shield (Claim 5)

Plaintiffs' fifth claim is that Marin and Doe #1 used excessive force on Shamecca Bryant during the October 2014 search when they handcuffed her tightly enough to cause injury and when they caused her to fall off the seat of the police van by failing to secure her and then abruptly accelerating. Bryant Compl. ¶¶ 26-28. Plaintiffs also allege that Bryant's legs were struck with a shield or baton by an unidentified officer. Bryant Objs. ¶ 9; Bryant Pls.' Opp'n 4.

The tight handcuffing does not constitute excessive force for the same reasons described in Section I.B.4. There is no allegation that Bryant complained that her handcuffs were too tight or that defendants ignored requests by her to loosen them. Nor does causing Bryant to fall in the van constitute excessive force for the reasons described in Section I.B.2. It is too late to add a new named plaintiff in place of Doe #1 and Marin was—at most—negligent in not putting a seatbelt on Bryant in the van.

Finally, defendants are also entitled to summary judgment on Bryant's allegation that she was struck on the legs by an unidentified officer. As discussed in Section I.B.2, the time to amend the complaint to substitute a specific defendant for John Doe has passed.

### 3. Pressing a Baton Against Ricardo's Neck (Claim 7)

Plaintiffs' seventh claim is that Doe #2 used excessive force on Ricardo Lopez during the October 2014 search when he placed a baton against his neck. Bryant Compl. ¶¶ 32-34. For the same reason that the other claims against John Doe defendants must fail, so must this one. See Section I.B.2.

**D.    Defendants Are Not Liable on Claim 9 (Refusing to Show Lillian the Search Warrant).**

Plaintiffs' ninth federal claim is that defendants violated Lillian Lopez's Fifth and Fourteenth Amendment due process rights when they refused to show her a copy of the search warrant in both October 2014 and January 2015. Bryant Compl. ¶¶ 38-40. This claim is essentially identical to the one brought by Carolyn Lopez in the Lopez suit. See Section I.C. For the same reasons discussed above, Lillian Lopez's due process claim must be dismissed.

**E.    State Law Claims**

For the reasons discussed below, I grant defendants' summary judgment motion as to all of plaintiffs' state law claims. Plaintiffs' failure to comply with New York's notice of claim requirements requires dismissal of their claims, as does the fact that their claims fail on the merits.

A plaintiff bringing a state tort claim against the City of New York or one of its employees must file a notice of claim against the city within ninety days of the claim arising. N.Y. Gen. Mun. Law § 50-e(1)(a); Warner v. Village of Goshen Police Dep't, 256 F. Supp. 2d 171, 174-75 (S.D.N.Y. 2003). In addition, such a plaintiff must plead in his or her complaint that the notice of claim was served at least thirty days before the suit was begun. N.Y. Gen. Mun. Law § 50-i(1)(b). These "requirements are construed strictly by New York state courts"—failure to comply typically warrants dismissal. Faruki v. City of New York, No. 10-cv-9614, 2012 WL 1085533, at *9 (S.D.N.Y. March 30, 2012). Moreover, "federal courts do not have jurisdiction to permit the filing of a late notice of claim." Warner, 256 F. Supp. 2d at 175.

All five state claims fail because plaintiffs did not allege in their complaint that at least thirty days elapsed between when the notice of claim was served and when they filed suit. Plaintiffs' notice of claim was filed April 15, 2015. Bryant 56.1 ¶ 83. This was, in fact, more than thirty days before they filed their complaint, but they failed to allege that fact in their complaint. While dismissal might seem like a harsh sanction for such a pleading omission, the statutory text is clear. In addition, because

plaintiffs' state claims fail for other reasons as well (discussed below), I decline to give them the opportunity to amend their complaint on this point. See Ellis v. Chao, 336 F.3d 114, 127 (2d Cir. 2003) ("[L]eave to amend a complaint need not be granted when amendment would be futile.").

### 1. Negligent Supervision (Claims 1 and 2)

Plaintiffs' first state law claim is that the City of New York was negligent in hiring, training, screening, supervising, and/or instructing Marin, resulting in Lillian's false arrest in January 2015. Bryant Compl. ¶¶ 38-39. Defendants are entitled to summary judgment on this claim. Most importantly, Lillian was not subjected to an unconstitutional false arrest. See Section II.B.1. Moreover, plaintiffs make no allegations as to the City's practices for hiring, training, screening, supervising, or instructing its officers, either generally or with regard to Marin—except to say that Marin must not have been adequately trained because he detained Lillian when he was only supposed to detain the "occupants of the subject apartment" and she "was not an occupant." Bryant Pls.' Opp'n 10. This is not sufficient to state a negligent supervision claim against the City.

Plaintiffs' second state law claim is that the City of New York was negligent in hiring, training, screening, supervising, and/or instructing Marin and Barese, resulting in Bryant falling in the van in October 2014. Bryant Compl. ¶¶ 40-41. Defendants are entitled to summary judgment on this claim as well. As with Claim 1, plaintiffs have not made out the underlying constitutional claim—in this case, using excessive force against Bryant during the first search. See Section II.C.2. Nor have they made sufficient allegations as to defendants' supposedly inadequate hiring, training, screening, supervision, and/or instruction. And finally, because this claim arose more than ninety days before plaintiffs filed their notice of claim,[8] it is barred by N.Y. General Municipal Law § 50-e. For all of these reasons, plaintiffs' second state law claim must be dismissed.

---

[8] The claim arose on October 1, 2014. The notice of claim was filed April 15, 2015, Bryant 56.1 ¶ 83—one hundred and ninety-six days later.

### 2. Vicarious Liability (Claim 3)

Plaintiffs' third state law claim is that the City of New York is vicariously liable for the actions of all of the individual defendants. Bryant Compl. ¶¶ 42-43. Defendants are entitled to summary judgment on this claim. A claim based on respondeat superior cannot survive when there is no underlying liability for the subordinates. Because I have concluded that none of the individual defendants is liable, there can be no vicarious liability for the City. See Harsco Corp. v. Segui, 91 F.3d 337, 349 (2d Cir. 1996).

### 3. Negligence (Claims 4 and 5)

Plaintiffs' fourth and fifth state law claims are that Marin, Barese and Does #0-2 were negligent in placing Bryant in the back of the van without a seatbelt during the October 2014 incident. Bryant Compl. ¶¶ 44-47. Defendants are entitled to summary judgment on these claims. As with plaintiffs' second state law claim, this claim is barred by N.Y. General Municipal Law § 50-e, because plaintiffs' filed their notice of claim over ninety days after the alleged negligence. Furthermore, the time has passed to substitute specific defendants for the John Doe defendants. See Section I.B.2. Plaintiffs' fourth and fifth state law claims must therefore be dismissed.

### CONCLUSION

For the reasons discussed above, defendants' motions for summary judgment in both Bryant and Lopez are granted in their entirety. Both cases are therefore dismissed.


So ordered.


Dated: June 7, 2018                                          \_\_\_\_\_s/ Allyne R. Ross_____
      Brooklyn, NY                                               Allyne R. Ross
                                                                United States District Judge